HULGAN *v.* THORNTON.

No. 16728. September 14, 1949.

*Howard, Tiller & Howard,* and *W. H. Reynolds,* for plaintiff in error.

*S. B. Wallace* and *T. C. Sowell,* contra.

ATKINSON, Presiding Justice. (After stating the foregoing facts.) ■ The petition of Thornton as originally filed contained various allegations to establish his claim to the office, though he was defeated in the election. After a general demurrer was interposed and before a ruling thereon was made, all allegations asserting a claim to the office were stricken, thus leaving the

petition only with allegations attacking the eligibility of Hulgan, to wit, that at the time of the election he was not a legal voter and had previously been convicted of a felony. Accordingly, as the petition stood at the time the ruling was made on the demurrer, it was a proceeding brought as a citizen and taxpayer, and not as a claimant to the office, and therefore the trial judge did not err in overruling the demurrer. *Davis* v. *Dawson*, 90 *Ga.* 817 (2) (17 S. E. 110); *Crovatt* v. *Mason*, 101 *Ga.* 246 (6) (28 S. E. 891); *Howell* v. *Pate*, 119 *Ga.* 537 (3) (46 S. E. 667); *Hathcock* v. *McGouirk*, 119 *Ga.* 973 (2) (47 S. E. 563).

This case differs from *Stephens* v. *Wohlwender*, 197 *Ga.* 795 (30 S. E. 2d, 470), as there the allegations clearly showed that the proceedings had been instituted by Stephens as a claimant of the office.

■ The case was submitted to the trial judge on the sole question of law as to whether the pardon, which was granted after Hulgan's induction into office, removed his ineligibility.

The record discloses that in 1932 Hulgan pleaded guilty in the United States District Court for the Northern District of Alabama to an indictment charging in three counts, first, the larceny and transportation in interstate commerce of a described automobile; second, the receiving and disposing of a described automobile knowing the same to have been stolen; and third, the larceny and illegal transportation of another described automobile.

There are three provisions of our law relating to pardons as affecting public officers. Article 2, section 2, paragraph 1, of the Constitution of 1945 (Code, Ann., § 2-801) declares: "The General Assembly may provide, from time to time, for the registration of all electors, but the following classes of persons shall not be permitted to register, vote or hold any office, or appointment of honor, or trust in this State, to wit: 1st. Those who shall have been convicted in any court of competent jurisdiction of treason against the State, of embezzlement of public funds, malfeasance in office, bribery or larceny, or of any crime involving moral turpitude, punishable by the laws of this State with imprisonment in the penitentiary, unless such persons shall have been pardoned. 2nd. Idiots and insane persons." The

Code, § 89-101, declares: "The following persons are held and deemed ineligible to hold any civil office, and the existence of any of the following states of facts shall be a sufficient reason for vacating any office held by such person, but the acts of such person, while holding a commission, shall be valid as the acts of an officer de facto, viz. . . (3) Any person convicted and sentenced finally for any felony, under the laws of this or any other State, involving moral turpitude, the offense being also a felony in this State, unless restored by a pardon from the proper executive, under the great seal of the State, to all the rights of citizenship." The act (Ga. L. 1943, pp. 185, 195, sec. 26, Code, Ann. Supp., § 77-528) declares: "Following the effective date of this act, all pardons shall relieve from civil and political disabilities."

It will be noted that both the constitutional provision and the Code section are not limited to such crimes as are committed in this State, but cover those committed elsewhere, where the offense is a felony or a crime involving moral turpitude according to the laws of this State. One of the offenses for which Hulgan was pardoned was the larceny of an automobile, which is a felony under Code § 26-2603. Accordingly, we are not here concerned with the question of a crime which is a felony in another State but not a felony under the law of this State.

It is clear that Hulgan, having been convicted of the larceny of an automobile, was, at the time of his election, ineligible under Code § 89-101 (3) "to hold any civil office." We are therefore confronted with the question of whether, after being elected and entering upon the duties of the office and after the filing of these proceedings, the granting of the pardon makes him eligible to hold the office.

Another provision of our Constitution which might throw some light on the question is article 11, section 2, paragraph 1 (Code, Ann., § 2-7901), which declares: "The county officers shall be elected by the qualified voters of their respective counties or districts, and shall hold their office for four years. They shall be removed upon conviction for malpractice in office; and no person shall be eligible for any of the offices referred to in this paragraph unless he shall have been a resident of the county for two years and is a qualified voter." It is therefore a necessary

requirement that a person be a qualified voter before he is eligible to be a county officer. *Lee* v. *Byrd,* 169 *Ga.* 622 (2) (151 S. E. 28). A commissioner of roads and revenues of a county is a county officer. *Sweat* v. *Barnhill,* 171 *Ga.* 294 (9) (155 S. E. 18), and citations.

As to the time at which a person's eligibility for public office is determined, this court has consistently fixed it as the date of the election. *Lee* v. *Byrd,* 169 *Ga.* 622 (3) (supra); *Shaw* v. *DeVane,* 169 *Ga.* 702 (2) (151 S. E. 347); *Bower* v. *Avery,* 172 *Ga.* 272 (6) (158 S. E. 10); *Taylor* v. *Aultman,* 177 *Ga.* 524 (3) (170 S. E. 355).

Pardons are not new. They are defined by Coke, 3 Inst. 233 (d), and by Blackstone, 4 Com. 402. But pardons after the sentence has been served must be of relatively new origin, as in 1846, In re *Flournoy,* 1 *Ga.* 606, we find Judge Nisbet saying: "Such a thing as a pardon after sentence of punishment executed, I have not known."

A full pardon restores one to his citizenship rights. And had it been granted in time for Hulgan to have become a qualified voter and to have been qualified to hold the office at the time of the election, his right to the office would have presented a different question. What, if any, retroactive effect can be given to this pardon? It is well settled that, where an office has been forfeited by reason of the conviction of a crime, a subsequent pardon does not restore him to the office so forfeited. *Morris* v. *Hartsfield,* 186 *Ga.* 171 (3) (197 S. E. 251); 39 Am. Jur. 555, § 59; 46 C. J. 1196, § 38. For annotations on the general effect of a pardon, see 18 L. ed. 882; 47 L. R. A. (N. S.) 206; 47 A. L. R. 542; 94 A. L. R. 1011; 126 A. L. R. 257. We can see no material difference in the effect of a pardon where an officer forfeits his office by reason of a conviction of crime, and where one by reason of having previously committed a crime is holding office though ineligible so to do. If a pardon for a crime committed by one in office does not have the retroactive effect of annulling a forfeiture of the office, resulting from the crime, we see no reason why a pardon of one who was holding an office, but ineligible by reason of the conviction of a crime, should be retroactive, annul his disqualification, and make him eligible. If a pardon does not have the retroactive effect of

voiding a forfeiture, it should not reach back and annul an ineligibility. To rule otherwise would mean that a person in office who commits a crime could not be reinstated by a pardon, but one who commits a crime before taking office and then secures a pardon could retain the office.

We are not unmindful that there is language in a previous decision of this court which, by reason of the general terms used, might appear contrary to the foregoing ruling. In *Widincamp* v. *Wood,* 167 *Ga.* 57 (1) (144 S. E. 900), it was said: "Although a person may be ineligible to hold public office at the time of his election, if he is nevertheless elected and inducted into office, and while holding the office his ineligibility is removed, the courts will not thereafter remove him solely on account of his ineligibility which existed at the time of the election." While that case was based on the fact that the law making the respondent eligible was changed by the General Assembly between the time of filing the proceedings and the date the trial judge rendered judgment, yet two Justices dissented therefrom, asserting that the decision was in the teeth of the statute and contrary to the previous decision of *Crovatt* v. *Mason,* 101 *Ga.* 246 (supra). Again in *Cooper* v. *Lewis,* 177 *Ga.* 229 (3) (170 S. E. 68), the above quotation from *Widincamp* v. *Wood,* 167 *Ga.* 57 (supra), appears, but the facts there are entirely different from those in the instant case. There quo warranto proceedings had been instituted against one who had been elected ordinary, on the ground that he was not qualified, in that he was not a qualified voter as he had not paid certain specified taxes due the City of Moultrie. There was no allegation that he had not paid his poll tax. Prior to the date of the election, the Constitution had provided that, to be a qualified voter, all taxes due should have been paid, but in the same election in which the respondent was elected this provision of the Constitution was amended so as to require only the poll tax to be paid in order to be a qualified voter. The court held that, the respondent having paid his poll tax and his ineligibility having been removed by a constitutional amendment adopted at the same election . in which the respondent was elected, he was therefore qualified when he took the office in January following the election in November. The decision is based on the constitutional amendment

removing his disqualification before being inducted into office. See also *Powell* v. *Hall*, 177 *Ga.* 488 (170 S. E. 354). Whether the decision in *Widincamp* v. *Wood*, 167 *Ga.* 57 (1) (supra), be right or wrong, it was predicated on the ineligibility having been removed by an act of the General Assembly. In *Cooper* v. *Lewis*, 177 *Ga.* 229 (3) (supra), and *Powell* v. *Hall*, 177 *Ga.* 488 (supra), the ineligibility was removed by a constitutional amendment. The quotation above referred to is considerably broader than the rulings made in either case.

The plaintiff in error relies largely upon, and quotes at length from *United States* v. *Athens Armory*, 35 *Ga.* 344. This is not a decision by this court, but a decision by the United States District Court, included in the appendix to the foregoing volume. It was a case growing out of acts of Congress of 1861 and 1862, seeking to confiscate the property of those aiding the Confederate States. In that case the party charged with aiding the Confederacy had been pardoned for his acts, by the President, a year before the property was sought to be confiscated. Nor do we find anything contrary to the ruling here made in the various decisions from other jurisdictions cited by the plaintiff in error.

*Judgment affirmed. All the Justices concur, except Head, J., who dissents.*